## Abel Ware, *appellant from a decree of the Judge of Probate, vs.* John Ware, *Executor, &c.*

It is the right and duty of the Judge before whom an issue of fact is tried, to determine which jury shall try the cause,—to discharge the jurors at his pleasure when they cannot agree,—to excuse jurors when he thinks proper,—and to call over a juror from one jury to serve on another, at his discretion.

Whether his decisions and orders in any of these particulars can be revised by a bill of exceptions,—*dubitatur,*—they being matters of judicial discretion, rather than matters of law.

Where, in an appeal from a decree of the Judge of Probate establishing a will, an issue is formed to the jury upon the sanity of the testator, the opening and closing of the cause belongs to the executor.

If, upon the cross examination of a witness, a question is put to him relating to the matter in issue, his answer may afterwards be contradicted by other proof, for the purpose of impeaching his credibility. But if the question relates to collateral matter, the answer of the witness is conclusive upon the party cross examining him. Nor is it necessary, in this State, first to ask the witness whether he has not, at other times, stated the facts in a different manner, in order to lay a foundation for contradicting him by proof that he has so stated them.

Where it is attempted to impeach a witness by proof of contradictory statements made by him out of court; he cannot be supported by the party calling him, by proof of other declarations out of court agreeing with his testimony on the stand:

Where, upon the probate of a will, the question is upon the sanity of the testator, the opinions of the opposing party upon that question, in favor of his sanity, expressed out of court, may be given in evidence by the executor, in support of. the will.

The rule admitting evidence of the declarations of a third person, made in the presence of a party and affecting his interest, is not to be extended to include declarations made before such interest was acquired or known by the party to exist.

Ware *v.* Ware.

Thus, a conversation between other persons, affirming the sanity of a testator, had in the presence of the executor, without his dissent, the testator being still alive, and it not appearing that the executor then knew that he was appointed to that office, or that the will was made, are not admissible against the validity of the will when offered for probate by the executor.

Upon the trial of such issue, the opposing party offered to read in evidence the letters of a stranger who was proved to be insane, for the purpose of showing that insane persons might rationally write and converse on some subjects ;—but such proof was held inadmissible.

Though none but the subscribing witnesses to a will are permitted to testify their opinions respecting the sanity of the testator ; yet where others were called by the party opposing the will, to testify to facts showing his insanity, and their testimony was impeached by proof of their declarations at other times that in their opinion he was sane ; it was held that these opinions might be considered by the jury, with the other evidence in chief, to prove his sanity.

It is not improper for a Judge to comment on the evidence, so far as he may deem it necessary fairly to present the cause to the minds of the jurors.

Where the probate of a will is opposed on the ground of insanity in the testator, this seems purely a question of fact ; and, if submitted to a jury, it falls wholly within their province.

Upon an appeal from a decree of the Judge of Probate establishing the validity of a will, the allowance of costs to the appellee, where the decree is affirmed, is within the discretion of this Court ; and will be refused, if there was reasonable ground for prosecuting the appeal.

This was an appeal from a decree of the Judge of Probate, establishing and approving the will of *John Ware* deceased ; and an issue was formed to the country upon the question of the sanity of the testator at the time of executing the will. After the issue was joined, the appellant filed a motion in writing, admitting that the burden of proof was on him, to show that the testator was not of sane mind, and thereupon praying that he might have the opening and closing of the cause ; which was overruled by *Weston J.* who sat in the trial.

When the cause came on to be tried, the Judge directed it to be put to the first jury, the second jury having had the trial of the preceding cause. The foreman of the first jury, on being called, requested to be excused from sitting in the cause, having formed and expressed an opinion upon the merits ; and he was accordingly excused. There being a supernumerary juror, the clerk was directed to call him upon the jury ; but the counsel for the appellee objected

to him, stating that he had been in a situation to hear much of the cause, and had probably formed an opinion. The juror, however, said that he had not; but he being still strongly objected to, and the whole of the second jury being in attendance, the Judge, wishing to have an unobjectionable jury impannelled, directed the clerk to call over the first juror on the second panel, who was the foreman, and who accordingly sat as a juror in this cause. To this the counsel for the appellant objected, insisting that the supernumerary ought to have been impannelled. Afterwards a juror was called to whom the counsel for the appellant objected. Upon inquiry, no legal cause of challenge appeared; but the counsel expressing a strong desire that another juror should be substituted, it was done, his place being supplied by the next man on the second panel. The jury, thus formed, tried the cause.

Dr. *Greene*, the attending physician of the testator in his last sickness, being called by the appellant, testified to certain acts and declarations of the testator, tending to show the unsoundness of his mind. Upon the cross examination he was asked whether he had stated to any one that the testator had his senses as well as ever; and whether he had uniformly so stated. He replied that he had stated to some persons, that when his mind was fixed on business he appeared regular and correct; but that to others, in whom he had confidence, and who would not report it to the testator, he had stated his real opinion, that the testator was not of sound mind; and he referred to Messrs. *Fargo, Pike, Heath,* and *Hamlet.* The counsel for the appellee then asked the witness, if he had ever stated that the appellant could not break the will, because the testator was of sound mind; or that the testator was capable of making a will; or that his mind was bright and clear. To these several questions the witness answered, that he did not recollect that he had ever so said. To all these questions the counsel for the appellant objected as improper to be asked; but the Judge overruled the objections. He also permitted the appellee to ask the witness, whether he had said that it would make a thousand dollars difference to him whether the will was established or not; to which he replied in the negative, the appellant objecting to the question.

Ware v. Ware.

Dr. *James Bates*, another witness for the appellant, testified that he had visited the testator during his last sickness, and stated what he saw, and heard him say. On the cross examination he was asked, whether he had told any person that whenever he saw the testator he was of sound mind; which he answered in the negative; the appellant objecting to the question, and the Judge overruling the objection.

The appellee called divers witnesses, whom he asked severally whether Dr. *Greene* had stated to them at various times that the testator had his senses,—that the appellant could not break the will, because the testator was of sound mind,—that he was capable of making a will,—that his mind was bright and clear,—that he was not insane,—that he had himself the best means of knowing the condition of his mind, and that the will could not be broken. To all which questions the appellant objected, but the Judge overruled the objections. The questions were all answered affirmatively by some of the witnesses, in the course of the testimony.

The appellant offered to prove, by the persons to whom Dr. *Greene* referred, that he had repeatedly stated to them in confidence, during the last sickness of the testator, that in his opinion the testator was not of sound mind. But this testimony, being objected to, was rejected by the Judge.

The appellee was permitted to prove that the appellant, within two or three weeks previous to the death of the testator, said that he had his senses. He was also permitted to prove that Dr. *Bates* had declared that the testator's mind was sound when he saw him; though all this evidence was objected to as improper to be offered.

The counsel for the appellant offered to read to the jury portions of several books of established reputation as medical authorities, and others upon the subject of medical jurisprudence; particularly, Cooper's Medical Jurisprudence, Johnson on the Liver, Darwin's Zoonomia, Thomas's Practice, Rush on the Mind, Good, Gregory, and others, to guide and instruct the jury on the subject of insanity, the diseases of the mind and of the body, and the sympathy between the body and its organs and the mind, and the symptoms attendant upon insanity; all which books the Judge rejected, but permitted

medical gentlemen on the stand to state their opinions upon these subjects, whether derived from books or from their own experience.

The appellant, having proved that one *John Jones* was insane, offered to read certain letters written by him while in that condition; which the Judge did not admit, the other party objecting to them. Another witness for the appellant testified, that during the last sickness of the testator, Deacon *Spaulding*, one *Fletcher*, the executor, and the witness being together in the store of the executor, under the chamber where the testator was, *Spaulding* expressed a wish to go up and see him; but *Fletcher* said " it was of no use," assigning a reason; and the executor immediately responded " no, it is of no use." The appellant proposed to ask the witness what the reason was which *Fletcher* assigned; but this being opposed, was not permitted.

The Judge was requested, by the counsel for the appellant, to instruct the jury, that if an illusion was fixed upon the mind of the testator as a reality, for months before and up to the time of executing the will, and his conduct was at any time influenced by such illusion, he was not of sane mind :—That if the testator was under a continued delusion for months previous and to the time of the execution of the will, and during that time believed an illusion of the imagination to be a reality, he was not of sane mind :—And that if he really, for months before and up to the time of executing the will, believed that he was repeatedly visited by a superhuman being, whom he saw, felt, heard and conversed with, as some of the testimony tended to show, then he was not of sane mind. But the Judge instructed the jury that the law, upon the facts assumed by the counsel for the appellant, had laid down no certain rules, and prescribed no deductions necessarily to be made from them; but that these facts, if proved, together with the other testimony in the case, must be left to their sound discretion as a matter of evidence, from which to determine the issue before them.

In summing up the cause to the jury, after calling their attention to the other evidence on both sides, the Judge adverted to the testimony adduced to contradict what had been stated by Dr. *Greene;* remarking to them that this was not of an affirmative character;

but that if it had been, and if Dr. *Greene,* who, as the attending physician of the testator during his last sickness, had the best means of knowing the condition of his mind, had testified as a witness, if it had been competent for him so to do, that his mind was perfectly and uniformly sound, it would have been testimony of great importance in the cause, calculated to afford much light upon the question before them ; and that his declarations to others to this effect, though short of this proof, and being introduced to impeach his testimony rather than to establish facts affirmatively, yet being in the case, should be considered by them in connexion with the other testimony.

The jury found that the testator, at the time of making the will, was of sound mind ; and it was agreed that the verdict should be deemed conclusive upon that point, in favor of the executor, unless the court should be of opinion that by reason of any of the decisions or instructions of the Judge at the trial, the verdict ought to be set aside.

*Sprague,* for the appellant, argued in support of the following positions :

1st. The court had no power *ex arbitrio* to set aside a juror regularly called. The supernumerary juror was thus called ; and though he wished to be excused, yet he showed no legal cause ; and the appellant insisted on his sitting. But the Judge set him aside, and ordered another to be called. For this he had no power at common law ; which sets no juror aside but upon regular challenge. *Tidd's Pr.* 779, 781 ; 3 *Bl. Comm.* 359, 363 ; 1 *Salk.* 152, 338. Nor is such power given by the statute regulating the trial by jury. *Stat.* 1821, *ch.* 84, prescribes the mode of constituting juries ; excludes none but persons convicted of infamous crimes, or incompetent ; directs the mode of trying the competency of any juror objected to ; requires that the twelve first on the list shall constitute the first jury, and that on excusing a juror for legal cause, a supernumerary shall be called in his stead. To admit, therefore, the power of a Judge, *ex mero motu,* at the request of a party, and without cause, to exclude a juror, is virtually to repeal the law, and leads to the packing of juries.

2d. The only question at issue being the sanity of the testator, and the presumption of law on this point being in favor of his sanity ; the burden of proof was on the appellant, to show affirmatively that he was insane.   And therefore, on the common rule of proceeding, the appellant should have opened and closed the cause, though some authorities may seem otherwise.   *Phelps v. Hartwell,* 1 *Mass.* 71 ; *Brooks v. Barrett,* 7 *Pick.* 94.

3d. The cross examination of Dr. *Greene* and Dr. *Bates* was improper.   None but a subscribing witness is to be asked his opinion of the sanity of the testator.   Others are merely to state facts. But to ask another witness whether he has not stated his opinions elsewhere, is only another mode of foisting in those opinions as evidence in chief to the jury, by contradicting the answers.   Thus, if a witness may not testify to the contents of a writing, and yet may be asked if he has not stated out of court what the writing contained, the rule is evaded.   The appellee, having asked the questions, should not have been allowed to contradict the answers ; or else the jury, instead of being permitted to consider the testimony as directly relating to the issue, should have been instructed to disregard it. *Poole v. Richardson,* 3 *Mass.* 330 ; 1 *Dane's Abr.* 451 ; *Needham v. Ide,* 5 *Pick.* 510 ; 1 *Stark. Ev.* 134, 144 ; *Spenceley v. Willock,* 7 *East.* 108 ; *The Queen's case,* 2 *Brod. & Bing.* 300 ; *Harris v Tippett,* 2 *Camp.* 638.

4th. The case of Dr. *Greene,* in reference to the opinions he had expressed was such as to entitle the appellant to the proof offered and rejected, by way of sustaining the perfect integrity of his testimony.   *Bull N. P.* 294 ; 1 *Phil. Ev.* 230, 231 ; *Luttrell v. Raynell,* 1 *Mod.* 283 ; *Sir Joshua Friend's case,* 4 *State Tr.* 613.

5th. The evidence of the appellant's opinion of the sanity of the testator was illegally admitted.   *Phelps v. Hartwell,* 1 *Mass.* 71 ; 3 *Dane's Abr.* 492, sec. 7.

6th. The authority of the medical books, especially those on medical jurisprudence, was as great as that of books of reports of other States ; and entitled them to the same consideration.   If the opinions of medical men may be given upon the stand, it is difficult to perceive why the books may not be read, from which those opinions have been formed.   1 *Salk.* 281.

7th. The letters of *Jones* were admissible, to show the jury how rationally a person really insane was capable of writing.

8th. If the opinions of the appellant were admissible, so were those of the appellee; and on this ground the testimony of what *Fletcher* said in his presence, and with his silent assent, ought not to have been rejected.

9th. If the declarations of Dr. *Greene* were admissible, it was only for the purpose of detracting from the weight of his testimony in chief, by showing that he had at other times expressed different opinions. But the Judge treated his declarations out of court, that the testator was sane, as positive evidence, tending to establish that fact; which was erroneous, at least unless all his opinions out of court should be taken together. 1 *Stark. Ev.* 50.

10th. The Judge ought to have instructed the jury as requested by the appellant, on the subject of mental illusions. An illusion fixed on the mind, constitutes insanity. It exists wherever the reason and judgment have no longer the control over the passions or imagination. And the facts being found or proved, the question whether they did or did not prove insanity was to have been decided by the court as a matter of law. 1 *Beck's Medical Jurisprudence*, 369, 374; *Hatfield's case*, 1 *Erskine's Speeches*, 495; *Miller v. Lancaster*, 4 *Greenl.* 159.

*Allen* and *Boutelle* argued for the appellee, citing the following authorities. To the second point,—1 *Co.* 71; *Brooks v. Barrett*, 7 *Pick.* 94; *Blaney v. Sargent*, 1 *Co.* 335; *Buckminster v. Perry*, 4 *Co.* 593.—To the correctness of the ruling of the Judge in relation to the testimony and opinions of Dr. *Greene*,—4 *Pick.* 439; *ib.* 179; 1 *Stark. Ev.* 134, 135, 148; 3 *Stark. Ev.* 1755; *Dickerson v. Barber*, 9 *Mass.* 227; *Stewart v. Sherman*, 5 *Conn.* 244; *Sears v. Dillingham*, 12 *Mass.* 360; *Hill v. Buckminster*, 5 *Pick.* 391; 1 *Stark.* 39, 40, 41; *De Sailly v. Morgan*, 2 *Esp. Rep.* 691; 2 *Camp.* 638, *note;* 1 *Phil. Ev.* 230, 231.—To the admissibility of the appellant's declarations,—*Phelps v. Hartwell*, 1 *Mass.* 71; 11 *East.* 578; *Atkins v. Sayer*, 1 *Pick.* 192.—To the testimony of what *Fletcher* said,—2 *Stark. Ev.* 37; *Jones v. Thomas*, 2 *Campb.* 647; *Doe v. Foster*, 13 *East.* 405.—And to the cor-

7

rectness of the Judge's instructions on the subject of mental illusions, —*Hambleton v. Russell*, 1 *Cranch*, 309; 3 *Stark. Ev.* 1702, *note m; ib.* 1707, *note u; Hathorn v. King,* 8 *Mass.* 371; *Stone v. Damon,* 12 *Mass.* 488; *Locke on Hum. Und. vol.* 1, *p.* 150; *book* 2, *ch.* 11, *sec.* 13.

MELLEN C. J. delivered the opinion of the Court, at the ensu-ing *July*-term, in *Waldo.*

In this case, after a long and laborious trial, the jury, by their verdict, have pronounced that the testator at the time of making his will, was of a sound and disposing mind. The issue having been thus found against the appellant, his counsel have reserved for the consideration and decision of the court, numerous questions arising out of the proceedings at the trial and the rulings and instructions of the presiding Judge; all of which we propose to consider in the order in which they have been presented in the argument by the respective counsel.

The first objection is founded in the proceedings on the part of the Judge in empannelling the jury. It appears that according to the course of business in court, the cause was in order properly to be tried by the first jury; the foreman of which having been excused on account of his having formed and expressed an opinion, there being but one supernumerary juror, he was called on to supply the place of the excused juror; and being objected to by the appellee, and inquired of, though not on oath, he stated that he had formed no opinion. But as strong objections were still urged against him by the appellee, he was set aside by the Judge, who expressed a desire to have the cause decided by an unobjectionable jury; and thereupon one of the second jury was called to sit in the trial of the cause; the appellant at the same time insisting that the supernumerary ought to have formed one of the panel. It appears also that one of the jurors, when called, was objected to by the appellant, and he was also set aside; no objection thereto having been made. Is the order of the Judge, setting aside the supernumerary in the circumstances above mentioned, a legal ground for setting aside the verdict? The 9th section of the act of 1821, ch. 84, re-

specting jurors, provides that the court on motion of either party, shall cause a juror to be examined on oath, as to his relationship to either of the parties, or whether he feels any prejudice or has expressed or formed any opinion; and if on such examination it shall appear that he does not stand indifferent in the cause, "another juror shall be called or returned, and placed for the trial of that cause in his stead." If the above provision would have in any manner availed the appellant, or imposed it as a duty on the court to have retained the supernumerary, as a juror on the trial, neither party moved that he should answer on oath; and so the Judge's order was not founded on, nor contrary to, any statute requirement or provision. Besides, if the juror had been sworn and answered all the statute questions in the negative, and the Judge had then, for satisfactory reasons, set him aside, no legal principle would have been violated; for the section before mentioned, makes it the duty of the court to set him aside when " it shall appear to the court that such juror does not stand indifferent in the cause;" but in the case at bar, had the juror, on oath, answered that he had formed no opinion; still there might have been various reasons which would have justified the court in setting such juror aside. Suppose the case that after a juror has answered that he is disinterested and has formed no opinion, he should request to be excused on account of deafness or indisposition, or to avoid giving offence to one or the other of the contending parties, and incurring his displeasure, both parties being his friends and neighbors; shall it be said that in such cases a judge cannot excuse and set aside such juror, whether the parties consent or not? Such a doctrine would certainly be a novel one, and opposed to a uniform course of practice ever since the statute was enacted. The Judge was influenced by commendable motives in the proceeding under consideration. In a cause of such magnitude and expectation,—a cause which in a fruitless trial at a preceding term, had consumed nearly a week,—a cause in which so much feeling had been excited and was then existing, the object was to have the trial conducted on principles and decided by a jury as impartial and unobjectionable as possible.

But the counsel for the appellant has urged that the language of the 11th section of the statute is imperative, and he has cited the following proviso, viz.: "Provided, and in case of the court's excusing for cause, any person of either of said juries, and there being any supernumeraries, the vacancy shall be supplied and the panels be filled and completed on the above mentioned principles, in the same manner as if the person excused had not been named on the jury list." In reply to this it is enough for us to observe that this section has no connexion with or reference to the arrangement of the jury for the trial of any particular cause, but relates exclusively to the mode of empannelling juries at the commencement of a term, or at the first appearance of jurors to be qualified. It is the right and duty of a Judge to superintend and direct as to the course of proceedings,—to decide which jury shall decide a particular cause, or discharge them at his pleasure when they cannot agree, —to make all requisite arrangements according to his sound discretion,—to excuse jurors when he thinks proper, or call a juror from one jury to another. It belongs to him in his discretion to do all these things; and we are by no means certain that such an order and proceeding as form the ground of this objection, are proper subjects of exception and open to revision and correction by the whole court. At least, they seem to be rather matters of judicial discretion than matters of law.

The second objection is that the order of the Judge was incorrect, by which the counsel for the appellant were permitted to open and close the cause. The counsel admits that the authorities are against him. They certainly are so; and we are satisfied the course of proceeding under the direction of the Judge was perfectly correct and proper in principle, as well as in accordance with the cases cited by the counsel for the appellee.

The third objection is that the ruling of the Judge was incorrect in permitting the questions to be answered, which were proposed to Doctor *Greene* and Doctor *Bates*; inasmuch as the answers only imported the expression of their opinions as to the capacity of the testator to make a will; and also in admitting testimony on the part of the appellee, contradicting those answers.—*Starkie*, in his learn-

ed treatise on the law of Evidence, vol. 3, page 1753, lays down the law as settled in England, that " whenever the credit of a witness is to be impeached by proof of any thing he has said or done in relation to the cause, he is first be asked, upon his cross examination, whether he has said, declared, or done that which is intended to be proved." *Queen's case,* 2 *B. & B.* 300. This principle has not been admitted in Massachusetts; *Tucker v. Welsh,* 17 *Mass.* 160 ; nor has it in practice in this State. Before proceeding to the examination of these grounds of objection, it may be proper to observe that Doctor *Greene* had been the attending physician of the testator, during his last sickness, and of course possessed the most accurate knowledge as to the situation of his mind and memory and his legal power to dispose of his property. He had been examined in chief as to the acts and declarations of the testator for the purpose of proving *him to have been incapable of making a le-*gal disposition of his estate ; and the cross examination was intended to draw forth answers from him, for the purpose of disproving their truth by other witnesses, and of thus impeaching his credit and weakening the force of his testimony. The motive was the same in the cross examination of Doctor *Bates.*—It is contended that this course of proceeding was contrary to the established principles and rules of evidence. We apprehend that the correctness of this position, according to the most approved authorities on the subject, will depend on the nature of the proposed questions upon the cross examination ; and that the true line of distinction is that which has been established between those questions which are merely collateral, and have no immediate connexion with the cause, and those which intimately relate to the subject of inquiry. The law on the point before us is laid down in very clear language by *Starkie,* vol. 1, page 134, and many authorities are there collected by him. He says, " It is here to be observed that a witness is not to be cross examined as to any distinct, collateral fact for the purpose of afterwards impeaching his testimony by contradicting him ;" and he cites the case of *Spencely v. Willot,* 7 *East.* 108, as an illustration of the principle. It was a penal action for usury, in which " the defendant's counsel were not permitted to cross examine as

to other contracts made on the same day with other persons, in order to show that the contracts in question were of the same nature and not usurious, if the witness answered one way, or to contradict him if he answered the other way; and should such a question be answered, evidence cannot afterwards be adduced for the purpose of contradiction;" and he cites *Harris v. Tippet*, 2 *Camp.* 638, and *Rex v. Watson*, 2 *Stark. Ca.* 149. He observes, " The same rule obtains if a question as to a collateral fact be put to a witness for the purpose of discrediting his testimony, his answer must be taken as conclusive, and no evidence can afterwards be admitted to contradict it." He cites the two last cases and *Rex. v. Teale*, in support of the position, and then adds, " This rule does not exclude the contradiction of the witness as to any facts immediately connected with the subject of inquiry." As an illustration of this rule, he observes, " a witness may be asked whether, in consequence of his having been charged with robbery of the prisoner, he has not said that he would be revenged upon him; and in case of denial he may contradict him. *Yervin's case*, 2 *Camp.* 638. In such a case the inquiry is not collateral, but most important in order to show the motives and temper of the witness in the particular transaction." The same doctrine is laid down in pages 145, 146; and after repeating the rule, that " no evidence can be given of particular, collateral facts, for the purpose of contradicting" the witness, he assigns the reason of it; " for this would cause the inquiry, which ought to be simple and confined to the matter in issue, to branch out into an indefinite number of issues; besides this, no man could come prepared to defend himself against charges which might thus be brought against him, without previous notice." Numerous cases are cited in support of the reasons thus assigned.

We have thus presented a summary of the law on the particular subject under consideration, and it now remains for us to inquire how far the facts on which the objection is founded bring it within the range and influence of the rule above stated. In the course of the trial all evidence of mere opinion as to the sanity of the testator was excluded, except that of the subscribing witnesses; and therefore, it has been contended that as Doctor *Greene* and Doctor *Bates*

could not have been permitted to testify their opinions, as physicians, to establish the insanity of the testator, their answers on the cross examination that they had expressed their opinions of his sanity, and the questions proposed for the purpose of drawing out these answers, were all improperly admitted. But if those questions were not collateral, but intimately related to the subject of the inquiry, they were proper, and the answers thereto; according to the authorities before cited, as laying the foundation for impeaching their testimony by contradicting them, or for the purpose of discrediting them by their answers; although their opinions could not have been offered in evidence by the appellant to establish the fact of insanity. So that we are conducted directly to the point whether the questions proposed to Doctor *Greene* and Doctor *Bates* were in their nature collateral to the cause and related to distinct and collateral facts, or whether they were intimately connected with the immediate subject of inquiry, and so were proper on the cross examination. On this question it would seem that two minds could not seriously entertain more than one opinion. The sanity of the testator was the only fact in issue ; and to prove and disprove it was the whole effort and labor of the parties ; and in this view of the subject we are all satisfied that the cross examination of those witnesses was conducted on proper principles ; and such being our opinion on this point, it follows, as a legitimate consequence, that the witnesses offered to disprove the truth of their answers and thereby impeach their testimony, were on legal principles clearly admissible for that purpose.

The fourth objection seems to be placed on an unstable foundation. The authorities cited clearly establish the principle that an impeached or contradicted witness cannot be supported by the party who called him, by proof of his declarations made at other times and to other persons, coinciding with his testimony. Such being the case, we do not in the present instance, see any reasons for considering it as removed from the influence of the general principle. Indeed it would seem objectionable on another ground, namely, that such declarations were mere expressions of the opinions of those witnesses as medical men ; all which kind of evidence was exclu-

ded on the trial when offered to prove insanity, excepting the opinions of the subscribing witnesses to the will as before mentioned.

The fifth objection is that the declarations of the appellant should not have been admitted. They were made two or three weeks before the testator's death, and were distinctly expressive of his opinion of the testator's sanity at that time ; and, admitting that a witness cannot be allowed to testify his opinion upon a question of sanity, as contended, does it follow that a person may not express such an opinion in conversation and afterwards, when such person has become a party on record and a party in interest, his opinion, as before expressed, may not be proved against him ? And though his rights in a case like this, are not to be impaired or affected by the opinion of others, does it follow that those rights may not be impaired or affected by his own opinion? By law the confessions of a party may always be given in evidence against him and his interest, though not thereby to defeat or impair the rights of others claiming under him. In the case before us, there are no such rights. The case of *Phelps v. Hartwell* is relied on. The facts of that case are very uncertain as to the declarations offered to be proved. It does not appear when they were made, or on what they were founded. They might have been made months before, or months after the death of the testator. Indeed the facts are so loosely reported that the case cannot be relied on. Besides, the court were divided in opinion, and that opinion was given in the hurry of a jury trial, without examination or time for any. On the whole we cannot sustain this objection.

The sixth objection is that certain books on medical subjects, mentioned in the report, and alleged to be of high reputation, when offered as evidence, were improperly excluded. It was admitted in argument that there seemed to be no authorities having any direct bearing on the point. The books mentioned in some of the authorities, as admissible in evidence, are of a totally different character ; and they are only exceptions from the general rule which is unquestioned. In the first place, those medical books contain only opinions or facts, stated by their respective authors. They do not come into court, as all other evidence must, either by consent or

under the sanction of an oath. Without such consent or sanction, their contents are mere declarations and hearsay. But it is urged as being more safe to read the opinions of distinguished physicians, as they have published them to the world, and thus learn the nature, tendency and effect of bodily disease, or the illusions of the imagination, upon the powers and operations of the mind, than to receive the opinions and facts from the mouths of witnesses on the stand, who have acquired all their knowledge on those subjects, perhaps, from those very books ;—that such a course as the latter is founded on the idea that a copy is more perfect than an original. In answer to this it may be observed that the benefit of cross examination would be lost by allowing books of such a character to be evidence ; and such cross examination is justly deemed a matter of great importance in the search after truth. The absence of all authority of adjudged cases on the point, is a strong argument against the admission of such evidence. The practice, if by law allowed, would lead to endless inquiries and contradictory theories and speculations. In a word, if one book is evidence, so is another ; and if all are admitted, it is to be feared that truth would be lost in the learned contest of discordant opinions.

The seventh objection is that *John Jones's* letters were improperly excluded. This has been but little relied upon, and we do not perceive how they could have had any influence in deciding the question as to the testator's sanity. They contained the mere declarations of a crazy man.

The eighth objection is that the answer or declaration of *Fletcher* to *Spaulding*, while the appellee was with them in his store, ought to have been admitted. Had the declaration in question been made by the appellee himself, it would have been admissible for the same reason which we have given in our answer to the fifth objection ; and it is contended that upon well known principles it should have been admitted, because spoken in the appellee's presence. On this point there is some uncertainty in the facts reported. The appellee was present in the store ; but whether he heard the excluded declaration is not certainly known to us. It is evident that he heard a part of *Fletcher's* reply to *Spaulding*, because he echoed the

8

words, " it is of no use"; and it is said we must infer that he heard the whole, the reason assigned as well as the answer given. How far we are at liberty to draw this conclusion, not knowing how near the parties were to each other ; how the appellee was then employed, and in how loud a voice *Fletcher* spoke, deserves consideration, and is not readily to be answered. It would have been an easy matter for *Fletcher* to state whether the appellee was attending to the conversation, and in a situation to hear it all ; and yet on this point not a word has been testified. But in relation to this objection there is another answer which has not been noticed by any of the counsel. The reason why declarations made by a third person in the presence and hearing of a party are admissible, is, that his silence is construed to be an assent to the truth of those declarations ; for every man is presumed to guard his own interest, and never yield his claims by a tacit acknowledgement of any thing which has a tendency to impair them. Now in the present case, when the declarations were made, the appellee was no party to this suit ; he had no interest in the property to which the suit relates ; the testator was then living ; it does not appear that the appellee knew that he had been appointed executor, or even that any will had been made. The appellee in legal contemplation was then a stranger and had no interest in the conversation ; nor was he in a situation to be committed by his silence under the then existing circumstances, though he might have been, had he then been a party in interest. In a dispute about a piece of property conveyed by a father to his son, can a plaintiff in an action against the son for the recovery of that property, give in evidence declarations made by a third person in the presence of the son, before he became owner of the property, going directly to defeat his title ? We apprehend the principle has never been carried to such an extent. We think this objection also must be overruled.

The ninth objection relates to the instruction of the Judge to the jury, so far as it had reference to the testimony of Doctor *Greene*. On examination of this, it appears that the only instruction given them was, that " being in the case it would be taken into consideration by them, in connexion with the other testimony." Surely

Ware *v.* Ware.

there is nothing incorrect in this. It is true that the Judge prefaced this plain and obvious instruction with some remarks on the different degrees of knowledge which different persons probably possessed as to the capacity of the testator at the time of making his will, and the different degrees of influence which such knowledge, if legally conveyed to the minds of a jury, would probably have upon their decision of the question of sanity or capacity ; and after noticing the difference between affirmative proof, and that which is merely of an impeaching character, and making an application of these remarks to the case then in trial, by way of illustration, he concluded by the instruction before mentioned. It has never been deemed a subject of legal exception, for a Judge to make his observations on the evi-- dence, the different kinds of it, and its bearings on the points in issue, and to illustrate his meaning and enforce his observations in such manner as he may think proper ;—taking care, in so doing, not to encroach upon the province of the jury in the decision of the facts, as they may think proper in view of the evidence, which they are to weigh. A Judge in the faithful discharge of his duty may and ought to state, arrange, compare and comment upon the evidence, so far as he may deem it necessary fairly to present the cause to their minds in as plain and clear a manner, as may be in his power. This proceeding on his part is often a most laborious duty, and he is to be governed, in the discharge of it, by a sound discretion ; and the manner in which he performs this duty is not a subject of revision, by virtue of our statute, as a dry question of law. If any specific instructions are desired, counsel may always request a Judge to give them, and should he improperly decline to give them, his refusal is a proper subject of legal exception and revision by the whole court.

The tenth and last objection urged, is that the Judge erred in not giving to the jury the explicit instructions which were requested by the appellant's counsel. The general answer to this objection re- poses on the principle that the question of sanity is of such a char- acter as to render it highly proper for the consideration and decision of that tribunal; and such was the opinion of the appellant before the commencement of the trial. By our statute on this subject, the

question may be decided by the court, without the intervention of a jury, or it may be tried by a jury. As in this instance it was the desire of the appellant that it should be so tried, the court were not disposed to deny his request; and now that a verdict has been returned against him, there seems no reason for listening to the objection with any particular indulgence. The question of sanity often depends on a multitude of circumstances, various and minute, peculiar and contradictory, and where lights and shades are some-times almost lost in each other. Besides, it is perhaps almost impossible for a Judge to draw any certain divisional line, and present it beforehand for the regulation of the jury. The line of separation between the powers and provinces of court and jury, in the decision of such cases, we apprehend it is also equally difficult to draw; and in those cases, cited by the counsel for the appellant, from the celebrated speeches of *Erskine*, to shew the various manners in which insanity displays itself and operates on the powers of the mind, it appears that the subjects of investigation were then before the jury for decision. In addition to these remarks, we would observe that the authorities sanction, in clear language, the course pursued on the trial of this cause. *Starkie*, vol. 3, page 1707, says, "The question of sanity is so peculiarly a question of fact for the decision of a jury, that a will of real estate cannot be set aside in equity, without being first tried at law on an issue of *devisavit vel non*." On the whole, after a careful examination of this cause, the authorities cited and the able arguments of the respective counsel, we are all of the opinion that the motion for a new trial cannot be sustained. Our opinion, we are sensible, has been extended to an unusual length; but it is the consequence of a desire on our part to assign reasons for our judgment, and, as far as in our power, give satisfaction to the parties, by a careful consideration of every objection urged at the argument, in a cause involving the decision of property to so large an amount.

From the proceedings which we have witnessed since the cause was removed into this court for final decision, we are satisfied that there was a reasonable ground for prosecuting the appeal; and, in view of all the circumstances of the case, we do not allow costs to the appellee.