## GEORGE PAGE *vs.* SAMUEL HOMANS & *al.*

Handwriting may be proved by any witness, who has previously acquired a general knowledge of the handwriting of the party, whose signature is in question, from having seen him write, from having carried on a correspondence with him, or from an acquaintance gained from having seen handwriting, acknowledged or proved to be his.

But if the witness have no previous knowledge of the handwriting, he will not be permitted to testify in relation to it, from information derived merely from a comparison of handwriting in Court.

If a question, collateral to the issue on trial, be put to a witness on cross-examination, his answer must be taken as conclusive, and cannot be contradicted by other evidence.

But where a witness testified in relation to the genuineness of a signature, and on cross-examination a slip of paper was put into his hands, having the name of a person written upon it three times, with a request to say, whether the writing was by the same, or by different hands, and he answered by the same ; and a witness was then called, and permitted to testify, objection being made, that the writing was by different hands ; *it was held*, that although the Judge might have rejected the testimony, yet that its admission did not furnish sufficient cause for granting a new trial.

ASSUMPSIT on a note of hand purporting to have been *signed by Isaac Thompson, Samuel Homans* and *Charles Keene. Thompson* did not answer. *Homans* and *Keene* denied, that the signature of their names to the note was in their handwriting, or made by their authority. To prove and to disprove the genuineness of the signatures, testimony was introduced on both sides. A number of specimens of the true signatures of each were introduced and submitted to the jury. The plaintiff called *W. Morse,* who had never seen the defendants write, was unacquainted with their handwriting, and professed no peculiar skill in signatures. He was requested to examine the specimens and signatures, and thereupon to give his opinion, whether those affixed to the note were the handwriting of the defendants. This was objected to, and the testimony was rejected by *Weston C. J.,* before whom the trial took place.

To prove the signature of *Homans* the plaintiff called *J. Hedge,* and on his cross-examination, the counsel for the defendants put into his hands a slip of paper, having the name of *Asaph R. Nichols* written upon it three times, and inquired of the witness, whether in his opinion it was written by the same hand. He answered

affirmatively, and Mr. *Nichols* was then called by the defendants, and inquired of whether the names were written by the same, or by different hands. This inquiry was objected to by the counsel of the plaintiff, but permitted by the Chief Justice. A verdict was returned for the defendants, which was to be set aside, if the testimony rejected ought to have been received, or if that which was admitted ought to have been rejected.

The case was argued in writing by *Wells,* for the plaintiff, by *Bradbury,* for *Homans,* and by *Emmons,* for *Keene.*

*Wells* argued,

1. *Morse* should have been admitted to testify to the handwriting of the defendants. A person, who has seen another write, has corresponded with him, *or has seen writing acknowledged to be his,* may be admitted to testify. *Hammond's case,* 2 *Greenl.* 33. There can be no difference between seeing handwriting upon the stand, and having seen it previously, saving that the latest impression would be the most accurate. The whole reasoning of the Court, in *Hammond's case,* is founded upon what was considered a well established rule, *the having seen writing acknowledged to be genuine.* If having seen a person write once, qualifies a man to be a witness to testify to the handwriting, should not he testify, who has the genuine hand before him ?

2. The testimony of Mr. *Nichols* ought not to have been received, because it was in relation to a matter *foreign* and collateral to the issue. The question to be decided was, whether the note was signed by the defendants, or either of them. If the witness answered affirmatively or negatively, it had no tendency to prove the issue between the parties. The signatures of the defendants might be familiar to the witness, and he might testify to it with certainty, when he could not readily discover a good counterfeit, when he was wholly unacquainted with the writing. The handwriting of *Nichols* was not in issue. The question there was, whether it was possible to imitate a handwriting so well, that a stranger could not detect the forgery. The determination of this question might have introduced more witnesses, and have been attended with much greater difficulty, than whether the signatures to the notes were those of the defendants. *Stark. on Ev.* 134 ; *Spencely* v. *DeWillot,* 7

*East*, 108; *Young* v. *Mason*, 8 *Pick.* 551; *Odiorne* v. *Winkley*, 2 *Gallison*, 51.

3. If the question relates to a collateral matter, the answer of the witness cannot be contradicted. *Harris* v. *Tippet*, 2 *Camp.* 637, and the cases there cited; 1 *Stark. on Ev.* 146.

Unless this is collateral evidence, then it must follow, that because a witness may commit an error on some possible question which might be put to him, having no connexion with the subject on trial, he must, necessarily, commit a mistake in every thing. If every collateral question is to be tried out, one trial might be the work of months.

4. The evidence was very material, because it was calculated to lead the jury into mistakes, and to lessen the weight, which ought to have been given to the testimony of the witness. It might have been, and probably was, the occasion of the verdict for the defendants.

*Bradbury*, for *Homans*.

The testimony of *Morse* was properly excluded. The rule of law is well established, that a witness, not professing skill and science in handwriting, and who had no *previous* knowledge of the hand in question, cannot be permitted to testify in relation to it from a mere comparison of hands. 11 *Serg. & Rawle*, 333; 2 *Stark. Ev.* 654, *note* 1; *Titford* v. *Knox*, 2 *Johns. Cases*, 211. To admit such evidence, would be to substitute the opinions of witnesses called by the party for that of the jurors.

He contended, that the testimony of *Nichols* was rightly admitted, to test the value of the opinion of the witness, *Hedge*, in the same manner, as if he was testifying about colors, to hand him specimens, and inquire whether they were the same or different.

He argued, that this was not collateral to the subject of inquiry, as it did not contradict or impeach the witness, but merely stated an independent fact, which might have a tendency to show, that the witness was not infallible. But even if the admission was erroneous, it is too trivial to have any effect on the jury, and the verdict ought not to be set aside on that account.

*Emmons*, for *Keene*, argued to show, that there are insuperable objections to the admission of the testimony rejected, both from authority and principle. The position assumed is this, that there must be some basis laid previous to the witness' appearance upon

Page *v.* Homans.

the stand, as the ground of his qualification to testify, from comparison of hands, to the character, as to genuineness or falsity, of the signature or handwriting in dispute. This basis consists either in having seen the party write—seen his correspondence—some peculiar skill in judging of handwriting—and possibly in certain cases, in the witness having had the acknowledged and indisputable handwriting of the party whose handwriting is the subject of inquiry, in his possession, and had an opportunity of carefully and critically comparing the specimens acknowledged to be genuine with those alleged to be spurious. He commented upon *Hammond's case,* and insisted, that it did not authorize the admission of testimony of this description, and cited *Phillips on Ev.* 372; *Homer* v. *Wallis,* 11 *Mass. R.* 312; *Titford* v. *Knox,* 2 *Johns. Cases,* 211; *Martin* v. *Tayloe, April,* 1803, and *U. States* v. *Johns,* 1806, *decisions in the Cir. Court U. S. for Pennsylvania, Wharton's Dig.* 245.

The testimony of *Nichols,* he contended, was properly admitted. He argued, that the answer of the witness is not conclusive, as to every collateral fact. Testimony in relation to any collateral fact is admissible, unless it discredits the witness stating such fact. In this case *Nichols'* testimony did not discredit *Hedge.* 1. Because it did not show, that *Hedge's* testimony was not true. 2. Admitting it did show, that *Hedge's* opinion was erroneous, that could not reflect any discredit on him as a witness. 1 *Stark. Ev.* 17, § 7. He commented on the cases cited for the plaintiff, and contended, that they did not extend to the exclusion of this testimony.

After a continuance for advisement, the opinion of the Court was drawn up by

WESTON C. J.—To prove the handwriting of any person, any witness may be called who has, by sufficient means, acquired a knowledge of the general character of the handwriting of the party, whose signature is in question. This may have been acquired, from having seen him write, from having carried on a correspondence with him, or, as was decided in *Hammond's case,* 2 *Greenl.* 32, from an acquaintance gained, from having seen handwriting, acknowledged or proved to be his. These are the sources of that previous knowledge, which may qualify the witness to state his belief,

whether the handwriting in question is or is not genuine. He testifies from a standard of comparison, existing in his mind, the sources of which are not usually in court to be produced at the trial. In *Hammond's case*, they had been lost and destroyed.

In the case under consideration, the witness had no previous knowledge. He was called upon to exercise his judgment upon a comparison then to be made. What light could he afford, upon the point in controversy ? He possessed no peculiar skill. It must have been more satisfactory to the jury, to see with their own eyes, than to ask the aid of his. He could only state how the evidence impressed his mind. The same evidence was before the jury ; and it was their duty to determine its force and effect. It was to their judgment, and not to the opinion of a witness, as to the weight of the evidence, to which the parties submitted. No case has been adduced, which warrants such a course of proceeding, except where the witness has been in a situation, to acquire a peculiar degree of skill, in regard to handwriting. In *Titford* v. *Knox*, 2 *Johns. Cases*, 211, it was decided, that if a witness had no previous knowledge of the hand, he cannot be permitted to testify as to his belief, from a knowledge acquired in Court, from a comparison of hands. In this State, where it is competent to submit that comparison to the judgment of the jury, there is neither necessity nor propriety in the admission of such testimony. The evidence of their own senses is better in its nature, than the statement of another, although under oath, as to how it appears to his eye.

It has become a rule of evidence, that a collateral fact, not bearing upon the issue, elicited in cross-examination, is not to be contradicted. The question in issue was the genuineness of a disputed signature. A witness, acquainted with the handwriting of the party sought to be charged, testified that he believed it to be his. The defendant was permitted to prove, that signatures could be so perfectly imitated by an adroit penman, as to render detection extremely difficult. We do not regard it as clear, that such testimony did not bear upon the issue, and was not proper for the consideration of the jury, in determining the weight of evidence, depending upon resemblance, whether deduced from a standard of comparison in the mind of a witness, or from genuine signatures before them. Such resemblance may generally be satisfactory.

But if signatures proved to be spurious, may have a resemblance equally striking, it may not be sufficient to overbalance facts and circumstances, calculated to throw suspicion upon the integrity of the instrument in controversy. That a resemblance is so far from being conclusive evidence upon this point, that it may be altogether delusive, was proved by the testimony of the two witnesses taken together.

The jury were called upon to find the signature genuine, because such was the opinion of the witness. We are not prepared to determine, that the admission of testimony fairly calculated to test the accuracy of his judgment, or the force of his conclusions, in regard to handwriting, if it may be deemed collateral in its character, is an objection sufficiently important, to require that the verdict should be set aside and a new trial granted. We think the Judge might have rejected the testimony ; for there must be some limit to collateral inquiries, even where they might in some of their aspects have a slight bearing upon the issue to be tried. In the case before us, we are not satisfied, that the verdict ought to be disturbed upon this objection.

*Judgment on the verdict.*