GEORGE L. BESSEY *vs.* JOHN E. HERRING.

Piscataquis.   Opinion October 16, 1922.

*While it is true that on cross examination matters of a collateral nature thus testified to cannot be contradicted by the cross examiner, who thus makes such inquiries at his peril, by introducing other testimony, and the introduction of such other testimony in contradiction should be excluded; yet, if admitted and exceptions taken, the excepting party must go further and show that the admission of the evidence was prejudicial to his interest.   Prejudicial errors only are reversible.   Although admitted evidence is technically inadmissible, if it is harmless the exception must be overruled.*

In the instant case plaintiff's counsel was bound by the answers made by the witness to his inquiries on cross examination concerning matters of a collateral nature, and could not contradict the answers by introducing other testimony. The evidence of Greeley could therefore properly have been excluded.

The excepting party must go further than to show that the admission of such evidence was error, and show that its admission was prejudicial to his cause. If harmless only, exception must be overruled.

On exceptions by defendant.   This is an action on the case alleging deceit in the sale of land.   The deceit complained of by the plaintiff consisted in the alleged representations made by defendant to plaintiff that in the land sold was included a ten-acre wood lot owned at the time of the representations by the wife of defendant.   Counsel for

plaintiff called Howard Greeley as a witness to contradict some matters of a collateral nature brought out by him on cross examination of the wife of defendant, and also as tending to show a fraudulent design or intent on the part of defendant in making to plaintiff the alleged fraudulent representations, and defendant's counsel objected. The presiding Justice excluded the evidence on the ground of tending to show fraudulent design or intent, but admitted it for the purpose of contradicting the testimony of the wife of defendant brought out on cross examination by plaintiff's counsel and counsel for defendant excepted.　Exception overruled.

The case is fully stated in the opinion.

*Hudson & Hudson,* for plaintiff.

*C. W. & H. M. Hayes,* for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J.　This is an action on the case for alleged deceit in the sale of land.　The verdict was in favor of the plaintiff, but the record does not disclose for what amount.　No motion was filed by the defendant asking to have the verdict set aside on the ground that it was manifestly wrong on the facts, but he asks that a new trial be granted because of a single alleged error in the admission of testimony.

From the defendant's bill of exceptions it appears that the defendant's wife was the owner of a ten-acre lot adjoining the land of the defendant which was sold to the plaintiff.　The plaintiff claimed that the defendant in showing him the land prior to the making of the deed included the wife's lot as a part of his own real estate to be sold, and that he, the plaintiff, made the purchase relying upon this false representation, and was deceived thereby because as he afterwards discovered the wife was the owner of this ten-acre lot.　The defendant denied this and claimed that he had made full explanation of the extent of his own and of Mrs. Herring's land.　This was the sharp issue of fact.

During the course of the trial Mrs. Herring was called as a witness by the defendant and on cross examination by plaintiff's counsel she was interrogated as to a certain conversation which took place in her presence the year before when her husband was trying to sell the same property to one Greeley.　The counsel evidently was desirous

of proving that in that attempted trade with another party the defendant included his wife's lot in his description of the premises. In this he was not successful, as she testified that before her husband had completed his description, she interrupted him and told him not to put her ten acres in.

In rebuttal the plaintiff introduced Greeley as a witness to this conversation for two purposes, first as tending to show a fraudulent design or intent on the part of Herring in the Bessey transaction, and second for the purpose of contradicting Mrs. Herring. The presiding Justice excluded it on the first ground, but admitted it on the second, and in his charge to the jury was careful to instruct them that they must not consider the evidence of Greeley as tending to prove deceit in the present case, but could only consider it as tending to contradict either the defendant or his wife.

Even as thus limited the defendant excepts to its admission and invokes the familiar rule that as the inquiries put to the witness on cross examination concerned matters of a collateral nature, the plaintiff's counsel was bound thereby and he could not contradict the answers by introducing other testimony. We think the technical point is well taken. The matter was of a collateral nature, res inter alios acta, and under such circumstances the rule is well settled that the cross examiner inquires at his peril. The evidence of Greeley could therefore properly have been excluded, *State* v. *Benner*, 64 Maine, 287; *Davis* v. *Roby*, 64 Maine, 427; but that is not decisive of the case. The excepting party must go further and show that the admission of the evidence was prejudicial to his cause. It is only prejudicial errors that are reversible. Although admitted evidence is technically inadmissible, if it is harmless the exception must be over-ruled. *Pierce* v. *Cole*, 110 Maine, 134-8.

What was then the nature and effect of Greeley's evidence as tending to contradict either the defendant or his wife as to the conversation the year before? It could have no tendency whatever to contradict the defendant because it does not appear that he gave any testimony on that point. It likewise failed to contradict Mrs. Herring and must have been a disappointment to plaintiff's attorney. Her testimony was as follows:

"Q Now were you present the year before when your husband was trying to sell this land to Howard Greeley?

"A. Yes, I was.

"Q. Did you hear your husband describe the boundaries of the farm?

"A. Yes, sir.

"Q. As he described the boundaries of the farm, did his description include your ten acre lot?

"A. I interrupted him.

"Q. Answer my question please?

"A. I interrupted him before he had finished and says 'Now you be sure and put my ten acres in.'

"Q. Put it in or not put it in, which?

"A. Why, to reserve it I mean.

"Q. You mean not to put it in?

"A. Yes, sir.

"Q. Now then he didn't make any mention of your ten acre lot at all, did he, until you interrupted him?

"A. No, sir, because he hadn't got through describing it.

"Q. Didn't you interrupt him because the lands as he was describing them there to Greeley included your ten-acre lot?

"A. No, sir, I didn't.

"Q. You were afraid he was going to include your ten acres so you interrupted him, so he wouldn't?

"A. No, sir; I wasn't.

"Q. But you did interrupt him?

"A. Yes, sir.

"Q. And told him not to put them in?

"A. I says, 'If my ten acre lot . . . you remember my ten acre lot,' in a joking way."

The point which the plaintiff's counsel desired and attempted to prove by this cross examination was that Mr. Herring included the ten-acre lot in his oral description to Greeley and that after he had finished Mrs. Herring spoke of her ten-acre lot. This she denied.

Greeley's testimony, introduced by the plaintiff to contradict this, was as follows:

"Q. Now if you will state what was said.

"A. Well after I looked over this farm I went to see Mr. Herring in regard to buying it, and we were in the kitchen, and of course I went there, . . . . I had looked the land over and went there with the intention of buying it. And Mr. Herring asked me if I didn't want to explore the land, and I told him that I didn't. I says

'I have been over it'.   And then he asked me if I had been up in the northeast corner to a stake and stones, as I remember it in the northeast corner of this lot and described it out, and at that time I knew by his description how it looked, and I told him I had.

"Q.   Well, did his description include that ten acre lot?

"A.   Well there hadn't been anything said about the ten acre lot then.

\*   \*   \*   \*   \*   \*   \*   \*   \*

"Q.   Well had Mrs. Herring said anything up to then?

"A.   Yes.   Mrs. Herring says: 'you ain't described my piece of land I have got up there, have you?'

"Q.   Who did she say that to?

"A.   She said it to Mr. Herring I suppose, and I sat there.

"Q.   What did he say?

"A.   Well she says, 'I have got a warranty deed of ten acres of land,' and I remember what I said to her.   I says, 'Of course if you have got a warranty deed of ten acres of land it is yours.'

"Q.   What did Mr. Herring say when she interrupted him and spoke about the ten acre piece?

"A.   Well he says 'I intended to tell him about that piece of land when we looked it over,—if we looked it over'."

On the whole this testimony of Greeley was at most a feeble contradiction of Mrs. Herring.   It shows that she did interrupt as and when she says she did, and Greeley gives her interruption substantially as she gave it.   It was so insignificant in weight and effect that it could have played no appreciable part in the verdict which was rendered. In fact its general effect was probative of Mr. Herring's good faith rather than bad faith, as he said he intended to tell Greeley about the ten-acre lot when they looked it over.

The single issue in the case on trial was what representations were made by defendant when on the premises he pointed out the land to the plaintiff.   The defendant's exceptions state it succinctly in these words:   "The important fact to be determined was what was said and done by Mr. Herring, the defendant, at the time he pointed out the land."   On that occasion only the plaintiff and defendant were

present. Mrs. Herring was not there and therefore could give no testimony on that crucial point, and it was a question of the credibility of the plaintiff or defendant.

The defendant relies with confidence on *Provencher* v. *Moore*, 105 Maine, 87, where the court said: "The testimony of Buker was a direct contradiction of the plaintiff tending to discredit him as a witness and must be regarded as prejudicial." The present case is to be distinguished from that in two important particulars as affecting the question of prejudice; there the person to be contradicted was the party plaintiff himself, here it is merely a witness and not a witness testifying to the crux of the case. There the contradiction was squarely and directly proven while here it is more nearly corroborative than contradictory, more helpful to the defendant than prejudicial.

Our conclusion is that while the testimony of Greeley was technically inadmissible and could properly have been excluded, it was practically harmless, and to quote the language of our court in an earlier and somewhat similar case in principle: "To sustain exceptions for such a cause would be more nice than wise." *Hovey* v. *Hobson*, 55 Maine, 256, 273.

*Exception overruled.*