**STATE of Maine**

v.

**Alton BUNKER a/k/a Samuel A. Bunker.**

Supreme Judicial Court of Maine.

Feb. 13, 1976.

Michael E. Povich, Dist. Atty., Ellsworth, John V. Romei, Asst. Dist. Atty., Machias, for plaintiff.

William E. Macdonald, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

In *State v. Northup*, Me., 303 A.2d 1 (1973), we pointed out that in those cases where the accused is a person on whom suspicion is likely to fall because of a record of conviction for similar offenses, we, as a review court, will scrutinize the record with great care to assure that the State's conduct has been fair whenever an appellant, in an appropriate manner, claims lack of fairness.

We might add that we do this even when it is obvious from the record, evidence of the appellant's guilt is overwhelming.

In this case this appellant, the evidence reveals, is a convicted rapist who was on parole at the time of his arrest for the crimes and subsequent trial with which this appeal is concerned.

The appeal now before us is from a judgment of conviction entered on a jury verdict of guilty of the crimes of kidnapping (*17 M.R.S.A. § 2051*) and crime against nature (*17 M.R.S.A. § 1001*).

We have examined the entire record in the case with great care.

We have carefully considered each point on appeal which appellant has raised before us.

We entertain no doubt whatsoever that the proceedings, from the point of arrest through trial and conviction, were conducted with exemplary fairness by the State.

We are satisfied the jury reached the only conclusion a rational evaluation of the evidence would permit.

Justice has been done.

We deny the appeal.

Because the details of the crimes as disclosed by the testimony of the witnesses and a large amount of physical evidence are so disgustingly sordid, we shall, whenever possible, avoid extensive discussion of the evidence in explaining our reasons for denying the appeal. Suffice it to say, the evidence is overwhelming that the appellant encountered a twelve-year-old boy who was riding his bicycle in a relatively remote area in Ellsworth. A very short conversation took place between the two, after which the appellant forcibly placed the boy in a truck which appellant was driving, put tape over the victim's mouth to prevent outcry, placed the victim's bicycle in the truck, and then proceeded to drive to an isolated point in Ellsworth. There, after the appellant had stopped his truck, he subjected this child to unspeakable sexual assaults.

Ultimately, appellant drove his victim back to the vicinity of the area from which he had been abducted, and after making threats as to the consequences of any disclosure of the appalling events of the afternoon, the bicycle was removed from the truck by appellant and the victim was released.

The victim, shortly thereafter and as soon as was possible, made complaint to his mother and the police. The victim's description of the truck, its exterior appearance including dents and an attached aluminum ladder, and the contents of the interior including the presence of two bags of cement, a box with peculiar markings, a roll of tape, a jar of vaseline, a quantity of paper napkins, and three paint cans,[1] bespoke the complete truth and accuracy of the description of the indignities to which he was subjected in the truck.

Appellant's clear, easily classifiable left palm print and three fingerprints of the fingers of his left hand were found on the victim's bicycle.[2]

The appellant's complaints before us are seven in number. While most have so little merit extended discussion is not justified, we will touch upon the issues in the order in which they were raised.

During the examination of a State Police sergeant who was called as a witness by the appellant, the officer was asked if the victim of the sexual assault described the appellant's penis during the course of an interview. This was apparently an attempt by the appellant to impeach the testimony of the victim on cross examination that he had no knowledge of certain characteristics of the appellant's penis described in the question.

---

1. All of these items were found in the truck by the police when they searched it pursuant to a lawfully issued search warrant two days after the crimes were committed.

2. Appellant testified in his own defense. The explanation he gave for the presence of his fingerprints on the boy's bicycle is completely unbelievable.

Objection to the officer's testimony was seasonably made by the State. The objection was sustained.

Appellant now claims that this ruling was error.

■ If the testimony was offered to demonstrate a prior inconsistent statement, there is serious question that it was in fact inconsistent. We think the court correctly ruled that the statement given to the officer was not an inconsistent statement.

Careful review of the cross examination of the victim reveals that he was asked several times if he recalled giving a description of the appellant's penis to the officer. He replied that he did not. He was then asked if he recalled certain features of the appellant's penis, to which he replied that he did not.

It is this testimony on cross examination to which appellant points in his claim the victim made prior inconsistent statements.

When the appellant sought to introduce the alleged prior inconsistent statement of the victim made to the investigating officer, the claim was *then* made that the proffered testimony had bearing on the issue of identification and was also intended to impeach the credibility of the victim. In ruling, the presiding Justice observed that in the circumstances the victim's description of the sodomist's penis would have been at most based on impressions and for that reason could not be received in evidence as bearing on identification of the sodomist.

Now, on appeal, appellant argues *only* that the evidence was admissible for the purposes of impeachment as a prior inconsistent statement. The matter to which the inquiry was directed related to the victim's ability to recall. If the officer had been allowed to testify that at the time of the investigation the victim did recall certain features about which inquiry was made, that would not have been inconsistent with the victim's in-court statement that he did

not at the time he testified recall such features. No claim is made by appellant in his brief that the statements related to a matter then in issue.

■ It has long been established [*State v. Kouzounas,* 137 Me. 198, 17 A.2d 147 (1941); *Bessey v. Herring,* 121 Me. 539, 118 A. 423 (1922); *State v. Priest,* 117 Me. 223, 103 A. 359 (1918); *Finn v. New England Telephone & Telegraph Co.,* 101 Me. 279, 64 A. 490 (1906); *State v. Benner,* 64 Me. 267 (1874); *Brackett v. Weeks,* 43 Me. 291 (1857); *State v. Sargent,* 32 Me. 429 (1851); *Page v. Homans,* 14 Me. 478 (1837); *Ware v. Ware,* 8 Me. 42 (1831)] that a witness cannot be cross examined on collateral matters for the purpose of subsequently contradicting and impeaching his testimony in relation to such collateral matters.

In the circumstances of this case, whether or not the victim recalled describing the attacker's penis to the officer was a collateral matter. On this ground the proffered evidence was inadmissible.

We find this point to be without merit.

■ The appellant next argues that the court ruled incorrectly concerning a hypothetical question posed to a physician witness.

Subsequent to the assault the victim of the sexual assault was examined by a physician. At trial a hypothetical question was posed to the physician as to whether or not such person hypothetically described "could be sodomized and still manifest the same physical condition that you examined four hours later." The question was answered affirmatively.

The next question added the hypothesis that the victim was "squirming or resisting." Upon objection being made, the court ruled the question should not be answered because as posed the question concluded a hypothesis not in evidence, i. e., that the victim was resisting. The only evidence in the record on the point was the

following colloquy between the victim and defense counsel:

"Q  Did you squirm or wiggle?

"A  Yes.

"Q  Very much?

"A  Yes."

No witness had used the word "resisting."

The appellant now contends that the question should have been answered and the jury should have been left to decide whether all material hypotheses stated in the question were based on facts in evidence.

In *Reid v. Eastern Steamship Co.*, 112 Me. 34, 90 A. 609 (1914), this Court stated:

"Concerning the form and scope of the hypothetical question and the extent and limitation of its assumption of facts and circumstances much must be left to the discretion of the presiding Justice. In framing a hypothetical question the practice is for the question to contain the assumption of the existence of such facts and conditions as the jury may be authorized to find upon the evidence as it then is, or as there may be good reason to suppose it may thereafter appear to be." 112 Me. at 49, 90 A. at 617.

See also, *State v. Vino Medical Co.*, 121 Me. 438, 117 A. 588 (1922).

Furthermore, although the ruling excluding the hypothetical question is not premised on this basis, we entertain serious doubt that the subject matter of the hypothetical question was one within the realm of the expertise.

In any event, exclusion of the proffered evidence was correct.

■ Appellant next attacks the sufficiency of the indictment[3] by arguing it was legally insufficient to properly charge the appellant with the crime of kidnapping because it did not negative the exception of the statute[4] by alleging the appellant was not the parent of the victim.

The question of when must exceptions in a criminal statute be negatived in the indictment has been many times before this Court. See, e. g., *Toussaint v. State,* Me., 262 A.2d 123 (1970); *State v. Rowe,* Me., 238 A.2d 217 (1968); *State v. Turnbull,* 78 Me. 392, 6 A. 1 (1886); *State v. Boyington,* 56 Me. 512 (1869); *State v. Godfrey,* 24 Me. 232 (1844).

"The true test is, whether the lawmakers intended to create a general offense, prima facie committable by all persons, in the instant case, by all felons, at all times, or in all places, and not a limited offense, committable only by particular persons, at particular times or in particular places." *Toussaint v. State,* supra, 262 A.2d at 125.

In the instant case we are satisfied it was not necessary to negative the exception which was found in the statute, i. e., that the accused was not the parent of the victim.

Appellant takes nothing by this point of appeal since it is without merit.

■ The final point appellant raises which we choose to discuss is his claim that the search warrant which was used as authority for the seizure of real evidence

3. "That on or about the eighth day of June, 1974, in the City of Ellsworth, County of Hancock and State of Maine, SAMUEL A. BUNKER did kidnap [name of victim] by removing him forcibly from the area of South Street so-called, in said City of Ellsworth, State of Maine and did then and there transport said [name of victim] to another place, to wit, Grant Street so-called, within the said City of Ellsworth, State of Maine."

4. 17 M.R.S.A. § 2051
"Whoever, except in the case of a minor by his parent, kidnaps or unlawfully confines, inveigles, decoys, imprisons, transports or carries another out of the State, or from place to place within it, shall be punished by imprisonment for any term of years."

used by the State at the trial was insufficient in law.

The search warrant recited that "I [the District Court Judge] am satisfied that there is probable cause to believe that the property described and used is being concealed on the premises above described, upon the following grounds: Affidavit hereto attached."

Physically attached to the search warrant was the affidavit of Bruce Merritt which, it is conceded, describes sufficient probable cause for the issuance of a warrant.

We have had occasion to discuss the sufficiency of a search warrant which depends upon an attached affidavit for its efficacy. *State v. Gamage,* Me., 340 A.2d 1 (1975); *State v. Stone,* Me., 322 A.2d 314 (1974); *State v. Hollander,* Me., 289 A.2d 419 (1972).

We are satisfied the search warrant in the instant case was properly issued. A good and sufficient affidavit was physically attached. As a reviewing court we have no difficulty in determining that the information in the affidavit which was physically attached to the warrant was *the* affidavit on which the District Court Judge bottomed his conclusion that probable cause existed for the issuance of the warrant.[5]

Although appellant has raised other issues, we find them so completely lacking in merit that discussion of them is unnecessary.

The entry must be:

Appeal denied.

All Justices concurring.

---

5. While in the future it might be helpful if the warrant described the affidavit in greater detail, i. e., gave the name of the affiant, the date it was executed, and the name of the official before whom the oath was taken, we have no difficulty in the instant case relating the affidavit to the search warrant.