## James McFain v. The State.

1. INDICTMENT—WHAT A SUFFICIENT DESCRIPTION OF AN OFFENSE.—An indictment sufficiently describes an offense by employing the language of the statute, whenever the statute sets out in the definition of the offense the specific facts constituting it, and does not describe the same by the use of generic terms.

2. INDICTMENT NEED NOT CONTAIN NEGATIVE AVERMENTS.—An indictment need not by averments negative the existence of facts which, under the statute, would relieve the act charged of criminality.

3. THREAT TO KILL, WHEN NOT QUALIFIED.—A threat to kill another, unless the party threatened would do or leave undone something which the party threatening had no right to require, is, in its legal effect, an unqualified threat.

APPEAL from Panola. Tried below before the Hon. Geo. Lane.

James McFain was indicted under art. 6585, for threatening to take the life of B. J. Harvey and of others named. The indictment charged that McFain "did then and there unlawfully, feloniously, and seriously threaten to take the life of B. J. Harvey" and the others named.

The law in force under which the indictment was found will be found to be the act amending the code, which took effect Oct. 16, 1871, and is as follows:

"Art. 6585. (784) If any person shall threaten to take the life of any human being, or to inflict on any human being any serious bodily injury, he shall be punished by confinement in the penitentiary for a period of not less than one year nor more than five years, or by a fine of not less than five hundred dollars nor more than two thousand dollars."

Art. 6586 (785) of the same act is as follows:

"In order to render a person guilty of the offense provided for in this chapter, it is necessary that the threat be seriously made."

Art 6588. (787) of the same act is as follows:

"A threat that a person will do any act merely to protect himself, or to prevent the commission of some unlawful act by another, does not come within the meaning of this chapter."

B. J. Harvey had purchased property at sheriff's sale, which was claimed by McFain as a part of his homestead. It adjoined the lot on which his residence stood, and there was evidence that he had cultivated it as a garden. Harvey had sued out a writ of sequestration, and was placed in possession of the lot purchased by him. Afterwards, on the 15th of May, 1874, Harvey, in company with some hands, was proceeding to construct a fence around the lot, when McFain approached with a double-barrel shot-gun, which he laid near him, and addressing Harvey and his hands said, in effect: "If you persist in putting up this fence around this lot, I will kill you if shot will reach

you;" and at the same time claimed the premises as his property.

Verdict guilty, and punishment assessed at a fine of five hundred dollars.

*Martin Casey*, for appellant, insisted on the insufficiency of the indictment, citing Hanson *v.* The State, 23 Tex., 232; Bell *v.* The State, 29 Tex., 494; Burch *v.* The Republic, 1 Tex., 610.

*George Clark*, *Attorney General*, for the State, insisted on the sufficiency of the indictment, citing Evans *v.* The State, 25 Tex. Supp., 304; Estes *v.* The State, 10 Tex., 305.; Horan *v.* The State, 24 Tex., 163; Cochran *v.* The State, 26 Tex., 680; Banks *v.* The State, 28 Tex., 644; Blair *v.* The State, 32 Tex., 474.

ROBERTS, CHIEF JUSTICE.—It is objected to the indictment that the words constituting the alleged threat are not set out. This objection was not raised in the court below. The indictment charges that the defendant "did then and there unlawfully, feloniously, and seriously threaten to take the life of B. J. Harvey" and of others named. This is substantially in the language of the statute creating the offense. (Pas. Dig., art. 2864.) That is, as it has often been held, sufficient when the statute sets out in the definition the specific facts constituting the offense, and does not define or describe the offense by the use of generic terms. The statute in this case presents two distinct facts, which concurring constitute the offense, one of which is the act of threatening to take life, and the other is the then existing serious intention entertained to execute it. A threat to take life is a definite single act, capable, it is true, of being performed in different ways by the use of different words, just as in the case of an assault. An assault is the unlawful attempt to commit a battery. The act involved in its commission may be performed in various ways and

by a great diversity of means and instruments. Still, however variant the modes or means of performing the act, it is single and definite, and, therefore, it is not required that the particular mode or means in any case shall be set out. So, in the same sense, a threat to take life is a single definite act, although it may be performed by the use of a great variety in the combination of words employed for the purpose. The case of Hanson *v.* The State, 23 Tex. 232, is referred to as sustaining this objection to the indictment. In that case the indictment charged that the defendant did "publish an obscene and indecent newspaper called John Donkey." There it was held that the indictment was bad, although it might follow the words of the statute in defining the office. The multifarious character of the various things and different classes of things intended to be prohibited by the statute necessarily made the terms used generic in order to avoid too great a prolixity. In that statute, also, the leading object is the thing published, or the part of the newspaper that constituted the obscenity; the publishing, and the intention with which the publishing is done, though necessary, are incidental facts, as are the publishing and malicious intent in the case of a libel. Not so in this case, where the leading object contemplated in the prohibition is the act itself of threatening to take life, whatever may be the mode of doing it, as in the case of an assault.

It is contended that the indictment should aver that the threat was not made by defendant to protect himself or prevent the commission of some unlawful act. This argument is founded upon art. 6588, Pas. Dig., which is no part of the definition of the offense. Its object is to expressly indicate that those facts, or either of them, concurring with and being the object of the threat, would relieve it from criminality, just as it is said in the code, in reference to an assault, that to point an unloaded gun at one is not an assault. That mode of explaining what acts in connection

with the act prohibited will prevent it from being criminal is very common in the code; and it has never been held that such acts must be negatived in the indictment, especially when, as in this case, they are specified in a separate article entirely disconnected from the definition of the offense.

Another objection made to the indictment is that the threat is conditional. It was in substance that, if the persons addressed continued to put up the fence on lot 111, where they were then at work for that purpose, that he would kill them. If the condition in the threat requires something to be done, or to be left undone, that the party threatening has no right to require, it must generally be held to be tantamount in legal effect to an unqualified threat. It would be similar to the case where one man should point a loaded gun at another in anger, accompanied with the declaration that he would shoot him if he did not get on his knees, or do something else which he had no right to require of him. In such a case it would be an assault consummated, and not relieved by the condition contained in the accompanying declaration. (Bell *v.* The State, 29 Tex. 494; 2 Russell, 717, 718.) The evidence tended strongly to show that Harvey, one of the persons threatened, who had the others engaged at work about the fence, had been previously put in possession of the lot 111, where they were at work, by the sheriff of Panola county, who had taken possession of it under a writ of sequestration in a suit brought by Harvey against the defendant to try the title to said lot; that defendant had failed to give the bond required of a defendant in such a case, and that Harvey had given the bond as plaintiff therein. There was nothing shown in contradiction of this. The defendant claimed the lot as part of his homestead, and sought to exercise ownership and exclusive control over it on that account. However sacred the homestead rights may be under our Constitution and laws, they

cannot be held to override and trample down the process of the courts, and the rights of parties acquired under such process, issued in a suit to try the right to such property. Therefore, as the condition in the threat of defendant required something which, under the circumstances, he had no right to acquire, it amounted, in legal effect, to a positive threat to take life. He who stands upon his legal rights must conform to the law in the modes pointed out by law for the ascertainment and preservation of them.

It was objected, also, that the verdict of the jury was contrary to the charge of the court and contrary to the law and evidence. The charge of the court, though very correct, was certainly as full and favorable to the defendant as the law would permit. There is very little, if any, substantial discrepancy in the testimony of the witnesses, and the facts as presented fully authorized the jury to find the verdict which they did.

AFFIRMED.