## Charles Haynie v. The State.

1. Evidence of Handwriting.—A witness is not, as a general rule, competent to prove the handwriting of another person unless he has seen the person write, or is conversant with his acknowledged handwriting.

2. Evidence of Confessions.—The Code of this state prescribes the rules which control the admissibility of confessions made by a defendant in custody, and such confessions are not available unless those rules have been complied with.

3. Same.—When the confession of a defendant to the main fact in issue would

not be admissible, it is, as a general rule, inadmissible to permit evidence of his confession of collateral facts inductive of the main fact.

4. SAME.—To prove that certain threatening letters were written by the defendant, a witness for the state testified that he had never seen the defendant write, but that, while the defendant was in jail under the charge on trial, witness received by mail several letters, which purported to be from defendant, dunning witness for money, and that, pending the trial, he had handed the money to defendant in the court-room, who then told witness he was sorry that he had threatened in his letters to sue witness for the money; and that, judging from the letters thus received, witness believed that the letters now in question were written by the defendant. Defendant objected to the witness stating what defendant said while in custody. *Held*, that the objection was well taken, and it was error to overrule it and allow the statement to go to the jury.

5. PRACTICE IN THIS COURT.—This court will reverse a conviction on account of illegal evidence material and pertinent to the issue, though cumulative only, no matter how probable it may be that the jury would have convicted on the legal evidence alone.

6. THREATS.—In a trial for threatening to take life, if the jury believed from the evidence that the object of the threat was to extort money, a conviction was not warranted unless they further believed that the defendant intended to execute his threat to kill if the money should not be paid.

APPEAL from the District Court of Harrison. Tried below before the Hon. A. J. BOOTY.

In the opinion will be found the letter and postal-card in which the threats were communicated, and all other facts necessary to elucidate the rulings.

*W. S. Coleman*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J. Appellant in this case was indicted under Articles 6585 and 6586, 2 Paschal's Digest, for seriously threatening to take the life of one R. L. Foster. Upon trial he was convicted, and his punishment fixed at confinement in the penitentiary for a term of four years.

The gravamen of the offense consisted, as was shown by

the evidence, in the following letter and postal-card, which were written to Foster. The letter is in these words:

" Hallville, Texas, *March 24, 1876.*

" Mr. Foster : We want $300 out of you, and we write for this purpose. We have been in Marshall watching for you for two weeks, and are posted in regard to you and yours. If you do not put us the above amount at the foot of the third telegraph post from the railroad track at Hallville (count the posts towards Marshall) by Tuesday night next, we will burn the Drovers' Home, kill you, and take your prostitute daughter away. We know you are close-fisted, and all this, but you swindled the wrong emigrants when you swindled us. Take warning now. We want no talk about this, for we have men watching that that will put your light out if you go to talking. You come to Hallville on Monday, wrap this money up carefully, and put it where we tell you, Monday night; then go home and keep your mouth shut, and you are all right. Bury the money at the foot of the pole. If we told you what you done to us, you would know us; so nix is the word. We mean what we say, and if you ante, all right; if not, look out for yourself, for we will do what we say, if it takes us ten years. A tight mouth, Foster, for if you speak of this letter we will know very soon after, and then good-bye to you. We sign no name."

The postal-card was in these words :

" Mr. Foster, Railroad House and Drovers' Home, Marshall, Texas.

" Millwood, *March 27, 1876.*

" Will you come or not? If not, you can look for us up Wednesday morning."

No witness saw defendant write this letter and postal-card; and, to establish and fix the authorship upon him, resort was had to circumstantial evidence, and especially to proof of his handwriting.

In the view we take of it the whole case turns upon two questions involved in the record :

1st. The rulings of the court upon the admissibility of testimony of the handwriting of defendant.

2d. The refusal of the court to give the special instruction asked by the defendant.

Before being admitted to testify as to the genuineness of a controverted document or writing, from his knowledge of the handwriting of a party, a witness ought, beyond all question, to have seen the party write, or be conversant with his acknowledged handwriting. Mr. Greenleaf says : "There are two modes of acquiring this knowledge of the handwriting of another, either of which is universally admitted to be sufficient to enable a witness to testify to its genuineness. The first is from having seen him write. It is held sufficient for this purpose that the witness has seen him write but once, and then only his name. The proof in such case may be very light, but the jury will be permitted to weigh it. The second mode is from having seen letters, bills, or other documents purporting to be the handwriting of the party, and having afterwards presumably communicated with him respecting them, and acted upon them as his, the party having known and acquiesced in such acts founded upon their supposed genuineness ; or by such adoption of them into ordinary business transactions of life as induces a reasonable presumption of their being his own writings, evidence of the identity of the party being of course adduced *aliunde* if the witness be not personally acquainted with him." 1 Greenl. on Ev., sec. 577. The same doctrine is stated in Stark. on Ev., vol. 2, p. 372 ; Roscoe's Cr. Ev., 6th ed., p. 165 ; 2 Ph. on Ev., 4th ed., p. 595 *et seq.;* and notes by C., H. & E.

In *Allen* v. *The State* the supreme court of Tennessee say : "All that the rule of law contended for requires is that a witness who is called upon to prove handwriting shall

be able to show that he has had such means of knowledge as to furnish a reasonable presumption that he is qualified to form an opinion upon the subject. And the opportunity of acquiring such knowledge, mentioned in the books on evidence, such as having seen the party write, having corresponded with him or seen writings acknowledged by him to be genuine, are only illustrative of the principle, and not to be understood as the only means whereby such knowledge may be acquired. If other means of knowledge, in the view of reason and common sense, will equally afford it, there can be no reason why the statement of such means of information shall not be held sufficient preliminary to an examination-in-chief in relation to the writing." 3 Humph. 368. See, also, *Page* v. *Homans*, 14 Me. 478 ; *McKonkey & Co.* v. *Gaylord*, 1 Jones L. 94.

In perfect harmony with these authorities is the language used by our own supreme court in the case of *Hanley* v. *Gandy*. Donley, J., says : " The most satisfactory testimony of handwriting is the witness who saw the instrument executed, and is able to identify it. The next best testimony is that of witnesses who have seen the party write whose writings are in controversy, or have had access to, or possession of, his writings, so as to impress the character of the writing upon the mind, and are able to form an opinion by comparing an impression of the writings on their minds with that which may be submitted for their examination ; and, while a comparison is made of the impression on the mind with the paper submitted for examination, it is clear that this is not such a comparison as is referred to where it has been held that it was not competent to prove handwriting by comparison. The exemplar which is upon the mind must of necessity be compared with the writing submitted for examination. No objection has been suggested to this course ; the objection to proof by comparison is, when two writings are submitted to the witness, who has no

previous acquaintance with either, to say, upon examination by placing them in juxtaposition, whether the writings were executed by the same person." 28 Texas, 211.

Viewed in the light of these authorities, we do not think the objections of defendant to the testimony of the witness Johnson were well taken. This witness had seen the defendant write. In fact, he testified that he had gotten defendant to write a letter, with the express purpose of obtaining a specimen of his handwriting. We think there was no error in admitting the testimony of this witness as to his belief of the handwriting shown by the letter and postal-card addressed to Foster.

As to the testimony of the witness Rush, it is necessary that we should state substantially the facts so far as his connection with the case is concerned, in order the more fully to understand the question presented by defendant.

The defendant had been, prior to his arrest, in the employ of the witness Rush. Witness was indebted to him, at the time of his arrest, for work and labor done. After defendant's arrest, and whilst he was in jail, Rush (the witness) received several letters, purporting to be written and signed by defendant, dunning him for the money due. Rush could not swear that these letters were from defendant. But he stated that, during recess of court for dinner, after defendant's case was upon trial, he went to defendant and paid him $10, when defendant expressed his regrets that he had threatened to sue him. Defendant was under arrest at the time. Witness, forming his impressions from the letters he received dunning him for money, believed the letter and postal-card addressed to Foster were written by the defendant. The witness said further: "Except as stated, I have no means of knowing or judging defendant's handwriting. Except some statements about regretting that, in the letters to me, he had threatened to sue me, defendant said nothing indicating that he wrote the letters spoken of."

The testimony of this witness, as to the handwriting, was objected to by defendant, and the objection was overruled by the court. We think the ruling of the court was error. At the time defendant confessed to Rush that he, defendant, wrote the letters dunning Rush for money, the defendant was not only under arrest and in custody, but was actually on trial. But for this confession Rush could not have testified that the letters written to him and the letter written to Foster were the handwriting of one and the same party. Was this testimony legal and admissible? We think not. Paschal's Digest, Article 3127, prescribes the rules which permit the confessions of a defendant, made whilst in custody, to be used against him. The confession, to be available against defendant, must come strictly within the rule thus laid down.

Now, it is clear that, under the circumstances detailed, had the defendant plainly, positively, and unequivocally admitted and confessed to Rush that he had written, and was the author of, the letter to Foster, Rush could not have testified to that admission or confession. Why? Because defendant, at the time it was made, was in custody. If, then, he could not have testified to a confession directly admitting the *corpus delicti*, how could his confession of a collateral matter, going to establish a matter directly connected with the *corpus delicti*, and essential to its proof, be admissible in evidence against him? The distinction between the two is not perceived. When the confession of a defendant to the main fact in issue would not be admissible, it is, as a general rule, inadmissible to permit evidence of confessions of collateral facts by which it was necessary to establish the main fact.

For these reasons the court erred in permitting the testimony of the witness L. M. Rush, over the objections of defendant. This error would of itself be sufficient to warrant us in reversing the judgment. In such cases the rule

is that " the admission of illegal evidence of an important fact material and pertinent to the issue, and 'which is additional to other facts legally in evidence, is erroneous, and a conviction will not be permitted to stand, however certain it may be that the jury would have found a verdict of guilty upon other sufficient evidence adduced on the trial." *McWilliams* v. *The State*, 44 Texas, 116. See, also, *Draper* v. *The State*, 22 Texas, 400.

But the other question presented is equally as important as the one just disposed of, and we therefore propose to examine and discuss it, and particularly so inasmuch as the point raised is one which has never heretofore been directly presented for decision in this state.

Our statute with regard to " threats to take human life" is *sui generis*. Pasc. Dig., Art. 6585. It is expressly provided in Paschal's Digest, Article 6586, that, " in order to render a person guilty of the offense provided for in this chapter, it is necessary that the threat be seriously made." And Article 6587 declares that " it is for the jury to determine, in every case of prosecution under this chapter, whether the threat was seriously made, or was merely idle and with no intention of executing the same."

Now, under the indictment in this case, the defendant was being tried for seriously threatening to take the life of R. L. Foster. Defendant's counsel asked the court to instruct the jury that, " while you may, if you do, believe that the defendant was serious in his purpose to get money by threatening and frightening, you cannot convict the defendant unless you believe that it was his purpose to kill the said R. L. Foster if the said Foster failed to deposit the money as demanded." This instruction the court refused to give. In this there was error, also. Upon the question of conditional threats, the court had charged the jury correctly, and substantially in the language of the supreme court in the case of *McFain* v. *The State*, wherein it was held that, " if the con-

dition in the threat requires something to be done, or to be left undone, that the party threatening has no right to require, it must generally be held to be tantamount, in legal effect, to an unqualified threat." 41 Texas, 389. This very charge—making the threat, as it necessarily did under the circumstances of the case, an unconditional one—it seems. to us rendered the instruction asked for peculiarly appropriate.

A party cannot, it is conceived, seriously threaten to take the life of another unless he has made up his mind to kill him, and has the will and the intention to kill him, both concurring and formed in the mind at the time the threat is made. It is unreasonable and utterly inconsistent to hold that a party can be serious in saying he intended to do a thing, and yet, at the same time, that that was not the thing he intended to do.

The defendant was either serious or he was not serious in threatening to take the life of Foster if he did not comply with his demands. If he was not serious, then, under the law, he was guilty of no offense, and the jury should have so found. If he was serious, then his intention was to kill him upon his failure to comply with his demand; and the jury should have been instructed that, unless they believed it was his intention to kill him in case he failed to deposit the money as demanded, they should acquit the defendant. This was the true criterion of the seriousness of the threats made by defendant as charged in the indictment in this case.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*