## [No. 1763.]

## E. G. TYNES v. THE STATE.

1. PRACTICE — PLEADING — INDICTMENT.— It is a general rule in criminal plead-
   ing that an indictment or information should charge the offense in the very
   language of the statutory words which characterize the offense, or should
   use words similar in import and signification to the statutory words.
2. SAME — THREATS.— The statute (Penal Code, art. 813) defining the offense of
   writing and sending or delivering a letter threatening death or violence to
   another prescribes that the act shall be "knowingly" done. The informa-
   tion in this case charges that the act was "unlawfully" done. *Held*, insuf-
   ficient to charge the offense, inasmuch as the word "unlawfully" neither
   comprehends nor is equivalent in meaning to the word "knowingly."
3. SAME.— Inasmuch as a serious threat to take life is a single and a definite act,
   it is not required that the particular mode or means be set out, but an in-
   dictment for such offense will be sufficient if it charges that the defendant
   "did then and there unlawfully, feloniously and seriously threaten to take
   the life of" another. The practice is different, however, when, as in this
   case, the offense sought to be charged is the sending of a threatening letter
   for the purpose of extorting money. In such case the indictment should
   set out the composition *in hæc verba*, in conformity with the rule that,
   "when a written instrument enters into an offense as a part or basis thereof,
   or when its proper construction is material, the instrument should be set out
   in the indictment." See the opinion *in extenso* on the question.

APPEAL from the County Court of Kaufman. Tried below before
the Hon. J. E. Dillard, County Judge.

The gravamen of the offense charged against the appellant in
this case was that, for the purpose of extorting money from J. D.
Stocking, he sent to the said J. D. Stocking a written letter threat-
ening to kill the said Stocking and destroy his property should he
fail and refuse to pay the sum of money demanded. Being con-
victed upon the information, his punishment was affixed at a fine of
$250, and confinement in the county jail for the period of six
months.

The statement of facts discloses a case at once rare and novel, and
though it is in no degree essential to the understanding of the ques-
tions upon which the conviction is reversed and the prosecution dis-
missed, a brief synopsis of the evidence is here appended.

Doctor Stocking testified, in substance, that about 2 o'clock one
Sunday morning in June, 1884, he was called from his bed by a
man on horseback to go to a camp beyond a certain bridge, to at-
tend a sick child. He had scarcely crossed the bridge when he was
confronted by two men with shot-guns. He looked back and saw
that his guide had covered him with a pistol. These parties robbed

him of $2 and a watch. A few minutes later they returned his watch, on his promise to say nothing about the robbery. On the Saturday following, the witness, who was postmaster at the town of Lawrence, received through the mail an unsigned letter, the envelope of which was postmarked at Terrell. The letter referred to is set out at length in the statement of facts. It amounted to a threat that if the said Dr. Stocking did not, by a certain time, deposit the sum of $300 in a bag provided for its reception at a certain point under the bridge near which he had been previously robbed, neither he nor his property would be permitted to stand. Upon investigation, this bag was found at the point designated. After keeping a watch on the bridge for several days, the defendant was the first man to cross the bridge whose actions at the time excited the suspicion of the witness. On this occasion he rode across the bridge very slowly, bending low over the saddle, and evidently scrutinizing the bridge or his horse's feet very closely. Up to this time witness had never suspected the defendant. Witness had seen the defendant write once, but that document being written in a different style than that in which the threatening letter is written, would not serve as a safe standard for comparison. Witness qualified as an expert in handwriting, and, examining the admitted signature of the defendant, said that the tail of the " y " resembled somewhat the tails of the " y's " and " g's " in the letter. He could not swear, however, that the same hand formed the said characters in both instruments.

Al Mitchell, who watched the bridge on Saturday night, testified in substance that about sunrise on Sunday morning the defendant, leading his horse, walked on to the bridge, stopping at a point immediately over the place where the sack was secreted. After looking carefully around in every direction, he ran a switch down through a crack in the bridge immediately over the sack. He felt around with the switch a short time, drew it up suddenly, and walked on across the bridge. Presently he returned, leading his horse, and went through precisely the same performance. In a few minutes, he mounted his horse, and rode off towards Kaufman. Witness and his companion discovered within fifteen minutes that the sack was gone. The sack was in its place before and at the time that the defendant stopped on the bridge. The party who stopped on the bridge and went through the performance narrated was the defendant, and none other.

Other witnesses corroborated Mitchell in every particular, the witness Joe Taylor averring positively that the sack was in its place when the defendant stopped on the bridge, and that when the de-

fendant jerked his switch suddenly from the crack he saw him catch at something. After the defendant left, the sack was found to be gone, and the witness declared that it could not have been removed by any person other than the defendant.

Another witness testified, for the State, that during the several months he had known the defendant as a professed physician, he had known him to attend but one patient, and that one but a single time. A few days prior to the defendant's arrest upon this charge, the defendant made numerous inquiries of the witness as to how much cash Dr. Stocking had or could control at once.

Two or three witnesses for the defense testified that at the time the defendant was said to have been on the bridge he was at another and distant part of Kaufman county.

In rebuttal a State's witness testified that on two occasions he had furnished the defendant whisky on his written order. On the day of this trial the defendant requested the witness, if he still had those written orders in his possession, to say nothing about them, and to suppress them.

Both the motion for new trial and the motion in arrest of judgment raised the questions considered in the opinion.

*J. S. Wood* and *H. P. Teague,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge. Appellant was tried and convicted upon an information brought under the provisions of article 813 of the Penal Code, which reads: "If any person shall knowingly send or deliver to another any letter or writing, whether signed or not, threatening to accuse such other person of a criminal offense with a view of extorting money, property, thing of value, or any advantage whatever, from such other person, or threatening to kill or in any manner to injure the person of such other, or to burn or otherwise destroy or injure any of his property, real or personal, or to do any other injury to such other person, he shall be punished by fine not less than one hundred nor more than one thousand dollars, and in addition thereto may be imprisoned in the county jail not exceeding one year."

Omitting formal parts, the charge as contained in the information is "that E. G. Tynes did, in the county of Kaufman, State of Texas, heretofore, on, to wit, the 20th day of June, A. D. 1884, unlawfully send a written letter to J. D. Stocking, wherein he, said E. G. Tynes, threatened to kill and injure said Stocking, and threatened to

destroy the property of the said Stocking, with a view and purpose thereby to extort money from the said Stocking, against the peace and dignity of the State."

Exceptions in the nature of a motion to quash the information were presented by defendant, and overruled by the court. These exceptions attacked the sufficiency of the information to charge the offense attempted to be charged, or that it charged any offense known to the laws of the State. After trial and conviction, a motion in arrest of judgment was made by the defendant, substantially presenting the same objection to the information; which motion was also overruled by the court.

Two objections are mainly urged to the sufficiency of this information. 1. That it alleges that the act constituting the offense was "*unlawfully*" done, when the statute requires that the act shall be "*knowingly*" done, and that within the spirit, intent and meaning of the statute the word "*unlawfully*" is not synonymous with, equivalent to, nor does it comprehend and embrace within its meaning, the statutory word "*knowingly*." 2. That the threatening letter is not set out in the information, either *in hæc verba*, or by tenor or by purport.

It is a general rule in criminal pleading that an indictment or information should charge the offense in the very language of the statutory words which characterize the offense, or use words similar in import and signification to the statutory words. (Clark's Crim. Law of Texas, p. 420, and note; *Hoskey* v. *The State*, 9 Texas Ct. App., 202.)

In *Barthelow* v. *The State*, 26 Texas, 175, where the statute characterized the crime with the word "wilfully," it was held that the substituted words "unlawfully, voluntarily and unjustly" were not equivalent, and did not embrace the meaning intended to be conveyed by the word "wilfully." In the case of *The State* v. *Stalls*, 37 Texas, 440, it was expressly held that the word "unlawfully" was not equivalent to the word "knowingly;" and Mr. Bishop, adopting into his text the doctrine held in Stall's case, says that "unlawfully" in the indictment will not cover "knowingly" in the statute. (1 Bish. Crim. Proc. (3d ed.), § 613.)

Should the letter have been set out *hæc verba* in the information, to give validity to the same? It is to be noted that the charge in the information is not alone a threat to kill, but it is a threat to kill, and also to injure the property of another, with the purpose of extorting money. In other words, it will be found that there is a clear and marked distinction between a serious threat to kill or take human life,

and the sending of a threatening letter with a view of extorting money. In Haynie's case, 2 Texas Ct. App., 168, the defendant was charged, not with sending a threatening letter, but with a threat to kill. Under the article 809, Penal Code, denouncing a penalty for seriously threatening to take the life of a human being, the leading object contemplated in the prohibition is the act itself of threatening to take life, whatever may be the mode of doing it. " A threat to take life is a definite, single act, capable of being performed in different ways by the use of different words, just as in the case of an assault. . . . Still, however variant the modes and means of performing the act, it is single and definite, and therefore it is not required that the particular mode or means in any case shall be set out." In such case, it would be sufficient for the indictment to charge that the defendant " did then and there unlawfully, feloniously and seriously threaten to take the life of A. B.," etc. (*Mc-Fain* v. *The State*, 41 Texas, 385; *Longley* v. *The State*, 43 Texas, 490; *Buie* v. *The State*, 1 Texas Ct. App., 58.)

A different rule prevails where the offense consists in the sending of a threatening letter with the purpose of extorting money. In such a case it is not sufficient to charge the offense alone in the statutory words. The composition, that is, the letter itself, should have been set out, or such a description given of it that the court, upon inspection, could have judged of its character, and whether or not it was what is alleged to be a threat for the purpose of extorting money. It was also essential that it should be set forth in order to identify the transaction and apprise and enable the defendant to know what he had to meet; and with that certainty as would enable him to plead his conviction or acquittal in bar to another prosecution for the same offense. (*State* v. *Hanson*, 23 Texas, 233.) In the statute the leading object is the thing written, and whether it shows that it was written with a purpose of extorting money. The general rule seems to be that when a written instrument enters into an offense as a part or basis thereof, or when its proper construction is material, the instrument should be set out in the indictment. (*White* v. *The State*, 3 Texas Ct. App., 605; *Horan* v. *The State*, 7 Texas Ct. App., 183; *Hoskey* v. *The State*, 9 Texas Ct. App., 202; *Coulson* v. *The State*, 16 Texas Ct. App., 189.)

Mr. Bishop says: " The forms of the statutory indictment will vary with the terms of the particular enactment on which it is drawn. Under 7 and 8 Geo. 4, ch. 29, sec. 8 (reënacted with slight variations in 24 and 25 Vic., ch. 96, § 44), making punishable one who 'shall knowingly send or deliver any letter or writing demand-

ing of any person, with menaces, and without any reasonable or probable cause, any chattel, money or valuable security,' it was an approved form to say that at a time and place defendant 'knowingly and feloniously did send to one B. a certain letter, directed to said B. by the name and description of Mr. B., demanding money from the said B., with menaces, without any reasonable or probable cause; and which said letter is as follows, that is to say,' etc., setting it out *verbatim*. . . . It will be perceived . . . that the letter in this precedent is set out by its tenor, not its mere substance, and such method appears to have been adjudged essential." (2 Bish. Crim. Proc., 3d ed, §§ 1025, 1026; *State* v. *Hunt*, 3 Crim. L. Magazine, 720.)

From these authorities we conclude that the information in this case is fatally defective, both in failing to charge that the act with which defendant was charged was "knowingly" done, and in failing to set forth, *hæc verba* or *verbatim*, the letter which constituted the gravamen of the offense. Wherefore the judgment is reversed and the prosecution is dismissed.

*Reversed and dismissed.*

[Opinion delivered November 12, 1884.]